UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-CR-0090-CVE |
| ) | (23-CV-0068-CVE-CDL) |
| JEFF JOSEPH EMERY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is plaintiff's motion to dismiss (Dkt. # 67) defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 63). Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Defendant did not file a response.

**I.**

On March 22, 2021, a grand jury returned an indictment charging defendant with assault with a dangerous weapon with intent to do bodily harm in Indian country in violation of 18 U.S.C. §§ 1151, 1153, and 113(a)(3) (count one), knowingly carrying, using, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (count two), assault with intent to commit murder in Indian country in violation of 18 U.S.C. §§ 1151, 1153, and 113(a)(1) (count three), and carrying, using, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (count four). On March 30, 2021, a magistrate judge appointed a federal public defender, Scott Graham, to represent defendant. Dkt. # 13. On September 21, 2021, a grand jury returned a superseding indictment

charging defendant with the aforementioned counts and adding a fifth charge of felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) (count five).

Defendant was arraigned on September 28, 2021. Dkt. # 43. On October 4, 2021, defendant waived his right to a jury trial and requested a change of plea hearing. Dkt. ## 46, 45. The parties negotiated a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and defendant agreed to enter voluntary pleas of guilty to counts one, three, and four as set forth in the superseding indictment. Dkt. # 49, at 1. The maximum term of imprisonment for count one was ten years, 18 U.S.C. § 113(a)(3), and the maximum term of imprisonment for count three was twenty years. 18 U.S.C. § 113(a)(1). The term of imprisonment for count four was ten years to life, to run consecutively to any other term of imprisonment. 18 U.S.C. § 924(c)(1)(A)(iii).

Defendant admitted to the following facts in the plea agreement:

> I, JEFF JOSEPH EMERY, admit that on November 8, 2017, I nearly collided with a car backing out of a driveway after I sped through a stop sign. The driver of the car, E.H., honker her horn at me. In response, I pulled over my car and got out. I then approached E.H.'s car and knowingly brandished a loaded gun at E.H. and her fiancé, L.L., who was also inside her car. The gun I knowingly brandished was a Norinco 9mm caliber semi-automatic pistol bearing serial number P05000, containing 9 rounds of Sellier & Bellot 9mm caliber ammunition in the magazine. I also had 6 spare rounds of 9mm caliber ammunition in a white sock inside my car at the time. While knowingly brandishing my gun, I threatened E.H. and L.L by telling them 'they were messing with a gangster' and that they 'ain't want to get popped.' I understood that this assault occurred in front of a house in the vicinity of 400 West Broadway Street in Broken Arrow, Oklahoma, which is within the Muscogee (Creek) Nation. I understand that this location is within Indian Country in the Northern District of Oklahoma. I am an enrolled member of the Cherokee Nation.
>
> I, JEFF JOSEPH EMERY, further admit that on March 10, 2020, I drove to my ex-girlfriend's house located at 813 North Winston Avenue in Tulsa, Oklahoma. At the time, I was driving a white Chevy Suburban. Once outside the house, I started shouting for my ex-girlfriend to come outside. Her brother, J.S., instead exited the house and told me to leave. In response, I pointed a firearm at J.S. and assaulted him by shooting his right hand, causing permanent injuries. I had the specific intent to

>commit murder when I shot him. I knowingly discharged a firearm in relation to a crime of violence. After knowingly shooting J.S., I fled from the scene in the white Chevy Suburban, hid the Chevy Suburban at a friend's house, and disposed of the firearm used in the shooting. I understand this assault occurred within the boundaries of the Cherokee Nation and therefore occurred within Indian Country in the Northern District of Oklahoma. I am an enrolled member of the Cherokee Nation.

Dkt. # 49, at 11-12.

Defendant agreed to relinquish certain constitutional rights, including his right to plead not guilty, right to a jury trial, and right to directly appeal his conviction or sentence. Defendant expressly acknowledged that he knowingly and voluntarily agreed to:

>waive the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, including any assessment, forfeiture, restitution order, the length of term of supervised release and any condition of supervised release, except for claims of ineffective assistance of counsel.

Dkt. # 49, at 3-4. The parties also stipulated that:

>Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the appropriate disposition in this case is a sentence of 180 months or 15 years of imprisonment, and a term of 3 years supervised release for Count One, a term of 3 years supervised release for Count Three, and a term of 5 years supervised release for Count Four, all terms of supervised release to run concurrently. This stipulated sentence falls below the anticipated guideline calculation for the violations to which the defendant is pleading guilty.

Dkt. # 49, at 17. Graham certified that he had explained the advisory sentencing guidelines to defendant and that his plea of guilty was voluntary. Dkt. # 48, at 6. Defendant stated in his written petition that he was satisfied with the advice of counsel. Id. at 4.

On October 4, 2021, defendant appeared with counsel for the change of plea hearing, and Graham advised the Court that defendant intended to plea guilty to counts one, three, and four of the superseding indictment. Dkt. # 66, at 2-3. In the hearing, defendant's attorney affirmed that the

3

plea agreement represented the best offer made to defendant. Id. at 4. The Court then reviewed the appellate and post-conviction waiver contained in the plea agreement with defendant:

> **THE COURT:** [] Do you understand that in consideration of the promises and concessions made by the United States in your written plea agreement you are knowingly and voluntarily agreeing to waive the right to directly appeal your conviction and sentence pursuant to 28, U.S.C., Section 1291 and/or 18, U.S.C., Section 3742(a), except that you reserve the right to appeal from a sentence that exceeds the statutory maximum and from any order of restitution?
>
> **THE DEFENDANT:** Yes, Your Honor
>
> **THE COURT:** Do you understand that you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence as set forth in 18, U.S.C., Section 3742(b) and the case of United States v. Booker?
>
> **THE DEFENDANT:** Yes, Your Honor
>
> **THE COURT:** Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28, U.S.C., Section 2255 including any assessment, forfeiture, restitution order, the length of the term of supervised release and any condition of supervised release except for claims of ineffective assistance of counsel?
>
> **THE DEFENDANT:** Yes, Your Honor
>
> **THE COURT:** Do you understand that you are expressly acknowledging that Mr. Graham has explained your appellate and post-conviction rights, that you understand those rights, and that you're knowingly and voluntarily waiving those rights as set forth in paragraph 3 of your plea agreement?

Dkt. # 66, at 16-17.

The Court read the superseding indictment to defendant and advised defendant of the elements of the offense that plaintiff would have to prove if the case proceeded to trial. Id. at 25-27. The Court asked to defendant to state in his own words what he did to commit the offense, and defendant admitted to the essential elements of the offense. Id. at 26-29. Plaintiff's counsel made a representation of the facts that it would be prepared to prove at trial. Id. at 31. The Court accepted

defendant's guilty plea and found that defendant's plea was knowing and voluntary, and that he was fully competent and capable of entering informed pleas. Id. at 35. Defendant's sentencing hearing was set for January 28, 2022.

The probation office prepared a presentence investigation report (PSR). The base offense level under 18 U.S.C. § 113(a)(3) (count one), was 14. Defendant received a four level enhancement because he used a firearm, raising his adjusted offense level to 18. The base offense level under 18 U.S.C. § 113(a)(1) (count three) was 33, and defendant received a two level enhancement because the victim, J.S., suffered serious bodily injury. These resulted in a combined adjusted offense level of 35. Defendant then received a three level reduction for his acceptance of responsibility, reducing his total offense level to 32. As to counts one and three, based upon a total offense level of 32 and a criminal history category of I, the advisory guideline range was calculated as 121-151 months. As to count four, the guideline sentence of imprisonment was 120 months–the minimum term permitted by statute–to run consecutively to any other term of imprisonment, pursuant to 18 U.S.C. § 924(c)(1)(A)(iii). The advisory guideline range for defendant's offenses would have been 241-271 months, but the parties agreed and stipulated that a total term of 180 months should be imposed. In order to accept the plea agreement, the Court was required to depart downwards seven levels as to counts one and three. The Court accepted the downward variance and sentenced defendant to the stipulated term of imprisonment of 180 months. Dkt. # 54. A judgment and conviction was entered on January 31, 2022.

Defendant did not appeal his conviction and sentence. On February 6, 2023, defendant mailed a letter in which he moved for an extension of time to file a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. The Court dismissed defendant's motion for an extension

because the Court lacked jurisdiction to grant an extension of time. Dkt. # 62. On February 21, 2023, defendant filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, and the motion is timely under § 2255(f)(1).[1] Plaintiff filed a motion to dismiss on March 9, 2023, and defendant did not respond.

## II.

Construing defendant's motion liberally, he alleges that the Court failed to apply the categorical approach when determining whether his count four charge could serve as a predicate for a conviction and sentence under 18 U.S.C. § 924(c)(1)(A)(iii), and meet the 18 U.S.C. § 924(c)(3)(A) definition of "crime of violence," as interpreted under U.S. v. Taylor, 596 U.S. 845 (2022). He asserts no other grounds for relief.[2]

---

[1] The Court advised defendant that his deadline to file a § 2255 motion was February 14, 2023. Dkt. # 62. The court clerk file stamped defendant's § 2255 motion on February 21, 2023. However, the envelope containing his filing was post-marked February 14, 2023. See Dkt. # 63, at 13. Under the prison mailbox rule, "an inmate's pleadings are deemed filed as of the date on which they are deposited into the appropriate prison mailing system." Lockaby v. Young, 42 F. App'x 313, 318 (10th Cir. 2002). Defendant's § 2255 motion is therefore timely, and the Court will consider his arguments therein. Unpublished decisions are not precedential, but they may be cited for their persuasive value. See 10TH CIR. R. 32.1.

[2] Defendant, in a letter accompanying his § 2255 motion, requested the appointment of counsel due to his "indigent status and inability to purchase Court documents to pursue collateral review." Dkt. # 63, at 11. He then asserts as ground two in his § 2255 motion, "any other grounds for relief [defendant] is not aware and reserve for appointment of counsel to pursue." Id. at 5. The Court denies defendant's request for the appointment of counsel.

"Defendants do not have a constitutional right to counsel when bringing a collateral attack on a conviction." United States v. Ballieu, 480 F. App'x 494, 498 (10th Cir. 2012). The Court has an obligation to appoint counsel only when "the defendant's § 2255 motion has stated a claim for relief and he is entitled to an evidentiary hearing." U.S. v. Shipp, 628 F. Supp. 2d 1312, 1315 n.2 (N.D.Okla. 2008). The Court otherwise has discretion to determine whether it is in the "interests of justice" to appoint counsel. 18 U.S.C. § 3006A(2)(B). Defendant was adequately able to articulate his claim for relief, and that claim is not factually or legally complex. See United States v. Dillon, 339 F. Supp. 2d 1155, 1160 (D.

Plaintiff filed a motion to dismiss defendant's § 2255 motion on the grounds that he waived his right to collaterally attack his conviction. Plaintiff argues that defendant's knowing and voluntary waiver can be challenged only if his § 2255 motion contains ineffective assistance of counsel claims challenging the validity of the waiver. Dkt. # 67, at 6. Because defendant did not assert that his counsel was ineffective, plaintiff declares that the waiver should be enforced and defendant's § 2255 motion should be dismissed.

The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable:

> (1) whether the disputed [claim] falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.

U.S. v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004). In determining the scope of an appellate and post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea." United States v. Novosel, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007). Challenges to the voluntariness of a guilty plea generally do not fall within the scope of a waiver. United States v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011). Hahn requires the consideration of two factors in considering whether a defendant knowingly and voluntarily agreed to an appellate and post-conviction waiver. First, the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325. Second, the guilty plea must be the result of an adequate colloquy under Rule 11. Id. A miscarriage

---

Kan. 2004), aff'd, 154 F. App'x 55 (10th Cir. 2005). The Court therefore denies defendant's request.

7

of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. Id. at 1327 (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001)). A defendant may not avoid enforcement of a waiver under the "otherwise unlawful" exception based on alleged errors in the calculation of his sentence, because this exception is focused on the fairness of the proceedings, rather than result of the proceedings. United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007). A miscarriage of justice does not occur when a defendant receives a sentence higher than he expected if that sentence does not exceed the statutory maximum. United States v. Green, 405 F.3d 1180, 1194 (10th Cir. 2005) (courts should consider the statutory maximum, not the defendant's anticipated sentence under the United States Sentencing Guidelines, to determine if a miscarriage of justice has occurred). The defendant bears the burden to show that a miscarriage of justice has occurred. United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

The first Hahn factor is whether defendant's claims raised in his § 2255 motion fall within the scope of his waiver of post-conviction rights. In his plea agreement, defendant agreed to "waive the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, [] except for claims of ineffective assistance of counsel." Dkt. # 49, at 3-4. Defendant's claim is substantive and not based on an allegation of ineffective assistance of counsel; his claim plainly falls within the scope of his waiver.

The second Hahn factor is whether defendant knowingly and voluntarily waived his rights. The plea agreement states that defense counsel explained defendant's post-conviction rights to him,

that he understood those rights, and that he was knowingly and voluntarily waiving certain post-conviction rights. Dkt. # 49, at 3-4. The Court conducted a thorough colloquy with defendant in which the Court reviewed each of the appellate and post-conviction rights that he was giving up by entering the plea agreement. Dkt. # 66, at 16-17.

Finally, the Court must consider whether enforcement of the waiver would result in a miscarriage of justice. Defendant has made no attempt to show that enforcement of the waiver will result in a miscarriage of justice, and the Court has not independently found any evidence suggesting that enforcement of the waiver would be unfair or inequitable. Defendant received the benefit of the plea agreement and his sentence was within the advisory guideline range agreed to by the parties. This sentence was below the advisory guideline range that would have applied if defendant had not entered the plea agreement. The Court finds that the post-conviction waiver contained in the plea agreement is enforceable, and plaintiff's motion to dismiss should be granted.

### III.

Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255. Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right. The Court does

not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that plaintiff's motion to dismiss (Dkt. # 67) is **granted**, and defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 63) is **dismissed**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Court declines to issue a COA on any issue raised in defendant's § 2255 motion, because defendant has not made a substantial showing of the denial of a constitutional right.

**DATED** this 12th day of March, 2024.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE